**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| M.C., by and through his Parents, C.C. and K.C., and C.C. and K.C., individually,<br><br>Plaintiffs,<br><br>v.<br><br>Wallingford-Swarthmore School District, Rudolph Rubeis, in his individual capacity, Ronald VanLangeveld, in his individual capacity, and Jennifer Gaudioso, in her individual capacity,<br><br>Defendants. | 09-cv-2413<br><br>JURY TRIAL DEMANDED<br><br>Honorable Eduardo C. Robreno |

**FIRST AMENDED COMPLAINT**

**I.
INTRODUCTION**

1.     In this action, Plaintiffs seek relief directly under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.  In addition, Plaintiffs seek relief under 42 U.S.C. § 1983 for violations of the petition clause of the First Amendment and the equal protection clause of the Fourteenth Amendment.

**II.
PARTIES**

2.     M.C., born in January, 2000, resides with his Parents C.C. and K.C. ("Parents"), within the boundaries of the Wallingford Swarthmore School District ("District").  Parents bring this action on their own behalf, and on behalf of M.C. a "qualified individual with a disability" within the meaning of § 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act"), 29 U.S.C. § 705(20) and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104.

3.     The District is a school district organized pursuant to the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §§ 1-101 *et seq*. The District is a federal funds recipient within the meaning of Section 504, 29 U.S.C. § 794(b)(2)(B) and a public entity as defined in the ADA, 42 U.S.C. § 12131(1), 28 C.F.R. § 35.104.

4.     Rudolph Rubeis (Superintendent), Ronald Van Langeveld (Director of Special Education) and Jennifer Gaudioso (Principal of Nether Providence Elementary

School) [collectively the "Individual Defendants"] are employees of the District who, at all times relevant to this action, acted under color of state law.

### III.
### JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343(a).

6.     Venue in this district is proper under 28 U.S.C. § 1391(b).

### III.
### ADMINISTRATIVE REMEDIES

7.     Plaintiffs do not have to exhaust administrative procedures because:

    a.  The Rehabilitation Act and Title II of the ADA incorporate the remedies and procedures of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq. See* 29 U.S.C. § 794a; 42 U.S.C. § 12133.  Title VI has no exhaustion requirement. *See Herring v. Chichester Sch. Dist.*, No. 06-5525.

    b.  Although the District is a local educational agency ("LEA") within the meaning of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401(15), 34 CFR § 300.28, and 22 Pa. Code §§ 14.102(a)(2)(vii) and 14.103, IDEA requires administrative exhaustion of Section 504, ADA and Section 1983 claims *only* in actions seeking relief under IDEA.  20 U.S.C. § 1415 (*l*).  Plaintiffs' claims for retaliation and interference arise solely under the Rehabilitation Act and the ADA.

    c.  Even if administrative exhaustion were otherwise required, this case would be subject to an exception.  Exhaustion is excused when the case presents a purely legal question or when the administrative process cannot grant the relief requested.  Pennsylvania Special Education Hearing Officers cannot award a declaratory judgment or monetary or compensatory damages.  Further, the questions presented in the administrative proceeding – whether or not the District proposed FAPE in March 2009 and whether or not Parents are entitled to reimbursement – is entirely distinct from the question of whether Defendants retaliated against M.C. and his Parents for invoking their right to a due process hearing .

### III.
### FACTS

8.     M.C. is a student with Pervasive Developmental Disorder and severe childhood verbal and motor apraxia.  As a result, he has severe deficits in receptive and expressive language and has very minimal skills in verbal and visual reasoning.

9.     M.C. is entitled to a free and appropriate public education ("FAPE") under the ADA and the Rehabilitation Act, as well as under the Individuals with Disabilities Education Act.

10.     M.C. attended programs in the Wallingford Swarthmore School District during for the 2006/2007 through 2008/2009 school years.  M.C. continues to attend District programming in the afternoons.

11.     During the 2007-2008 school year, the 2008 Extended School Year, and the 2008-2009 school year, the District failed to provide M.C. with FAPE.  Plaintiffs have commenced administrative proceedings related to the District's failure to provide FAPE.

12.     On March 9, 2009, the District proposed revisions to M.C.'s IEP.  However, the revisions did not provide a free and appropriate public education.  At the end of the March 9, 2009 IEP meeting, Parents invoked their rights under 34 CFR § 300.148(c) and (d)(1) to "at the most recent IEP Team meeting that the parents attended prior to removal of the child from the public school, . . . inform the IEP Team that they were rejecting the placement proposed by the public agency to provide FAPE to their child, including stating their concerns and their intent to enroll their child in a private school at public expense."  Parents explained that they would pay for intensive instruction in a scientifically-based reading program, Lindamood Bell and seek reimbursement through the administrative procedures established under IDEA.

13.     From March 9 through 20, 2009, M.C. attended Lindamood Bell programming for the full school day.  On March 20, 2009, Parents informed the District that M.C. would continue to receive Lindamood Bell programming in the mornings and would be at school for lunch, recess and afternoon programming.  Parents also offered to pay for the Lindamood Bell instructor to deliver the instruction within M.C.'s elementary school.

14.     Defendants responded with threats of truancy prosecution.

15.     On March 30, 2009, as indicated in their previous correspondence, Parents brought an administrative proceeding seeking to protect their rights and M.C.'s rights under IDEA.

16.     The District's attendance policy, in accordance with Pennsylvania law, provides that "a Principal or teacher may temporarily excuse a student from attendance for 'urgent reasons.'"  Counsel for Parents requested that the District, pursuant to this policy, excuse M.C. from attendance.  Counsel for the District responded that the District would not excuse M.C. from attendance in the mornings and would proceed with truancy prosecution.

17.     On March 24, 2009, Parents received a notice that they would be prosecuted for truancy violations from March 10 through 13, 17 through 20, for the half-

day absences after March 20, and for absences that occurred on December 5 and 22, 2008.

18.     On March 26, 2009, Parents wrote to the Principal of Nether Providence Elementary School explaining in writing that M.C. missed school on December 5 and 22, 2008 due to illness.  (The District was in fact aware of the reason for M.C.'s absence in December, 2008 because he had been hospitalized in December.)  They reiterated the request for temporary excusal so that Parents could protect M.C.'s rights as provided in federal and state special education law.  Parents also again offered to pay to have the Lindamood Bell instruction delivered within Nether Providence Elementary School.  A copy of that correspondence is attached as Exhibit 1.

19.     On March 27, 2009, Parents received notices of truancy violations.  Parents responded with correspondence to the District's counsel stating:

> Dear Mr. Berman:
>
> I am responding to your correspondence of today's date and to the truancy paperwork that was delivered today to M     C     's home.
>
> Because I cannot communicate with the Board of School Directors personally, I am specifically requesting that you notify them of the claims of intimidation and retaliation related to this case, so that they can have the opportunity to rectify the situation prior to my clients being forced to take further action.
>
> As I have stated previously, the District's filing of truancy proceedings is blatant retaliation and intimidation in violation of Section 504 of the Rehabilitation Act and the First Amendment to the United States Constitution.  It is obvious from the sequence of events here that the District, the Superintendent, Dr. VanLangeveld, Ms. Gaudioso and now, the Board of School Directors, have personal knowledge of and involvement in this retaliation.
>
> The following timeline establishes the retaliatory nature of the District's actions.
>
> - November 2008:  The IEP team (District members included) agrees that M     is not making appropriate progress and needs more intensive instruction than he is getting within the District.  The team agrees to look at private schools in the area. M     is 9 years old and reading at a pre-primer level.
> - November 2008 to February 2009: The District fails to send out referral packets to private schools.
> - February 2009: Mrs. C         contacts over 20 private schools in the area. None of them will accept M     because he is so far behind in reading.  However, if through intensive instruction he can make some progress, some schools might accept him in the Fall.
> - March 2009: The IEP Team meets.  The meeting is taped.  The District-contracted speech/language pathologist states that M     needs intensive 1:1

instruction in reading that is phonologically based. Dr. Van Langeveld indicates that Lindamood Bell is a good program. Parents request that the District fund intensive Lindamood Bell instruction in the mornings (either in the elementary school or at the Lindamood Bell facility). The District refuses and Parents indicate that they will fund the Lindamood Bell services privately and seek reimbursement.

- M    attended Lindamood Bell for a full day through March 20, 2009. On March 20, Parents told District personnel that M    would be attending school for half-days beginning on March 23, 2009, for lunch, recess, specials, and related services.
- This week, the District threatened Parents with a truancy action. Parents responded yesterday, laying out the above timeline and indicating that they would be willing to have the Lindamood Bell instruction delivered to M    at the elementary school. (M    cannot attend Lindamood Bell after school and receive the ineffective literacy instruction during the school day, because it will hamper his ability to progress in the Lindamood Bell program.)
- Today, Parents received notice of truancy charges, although M    is attending school for a half-day every day and the District is aware that he is receiving parentally funded programming the other half of the day.
- The District's policy allows for the Principal or Superintendent to grant a temporary excusal from attendance for "urgent reasons." Parents have requested such a temporary excusal so that M    can attend the 1:1 intensive reading instruction that is phonologically based that he so desperately needs. The District's refusal to use this policy to excuse M    temporarily from attendance is discriminatory. In fact, if we are forced to file a lawsuit in federal court, I would not be surprised if discovery reveals that students have been temporarily excused for far less pressing reasons – such as a family vacation.

20.    Pennsylvania law allows WSSD to grant temporary excusal from attendance students like M.C. who are receiving private tutoring at parental expense. *See* 24 P.S. 13-1329(a): "The board of school directors of any school district may, upon certification by any licensed practitioner of the healing arts or upon any other satisfactory evidence being furnished to it, showing that any child or children are prevented from attending school, or from application to study, on account of any mental, physical, *or other urgent reasons*, excuse such child or children from attending school as required by the provisions of this act, but the term "urgent reasons" shall be strictly construed and shall not permit of irregular attendance. In every such case, such action by the board of school directors shall not be final until the approval of the Department of Public Instruction has been obtained. *Every principal or teacher in any public, private, or other school may, for reasons enumerated above, excuse any child for non-attendance during temporary periods.*"

21.    Pursuant to written District policy implementing 24 P.S. § 13-1329(a), WSSD officials could have excused M.C. from attendance. *See* Policy 204, attached hereto as Exhibit 2.

22.     Parents requested a temporary excusal from attendance in this case so they could exercise their right to provide an appropriate education to M.C. when the District was failing to provide appropriate instruction.

23.     On information and belief, the District has excused other students from attendance for less compelling reasons than the reason in this case.

24.     Further, on July 21, 2009, Special Education Director testified under oath that the District had provided, for another student within the District, educational services at Lindamood Bell.  *See* Exhibit 3 to First Amended Complaint.  Thus, the District recognizes that Lindamood Bell can provide appropriate educational programming, and the District itself has used Lindamood Bell.  The decision to prosecute Parents for truancy when they chose to avail themselves of the same programming that the District itself has provided and seek reimbursement under IDEA is evidence of retaliatory intent. *If a student placed by the District at Lindamood Bell is complying with compulsory attendance obligations, then a student unilaterally placed by Parents (as is their right under IDEA) is not truant.*

25.     By correspondence dated March 27, 2009, Parents requested that counsel inform the Board of School Directors of the claims of intimidation and retaliation so that the Board could take appropriate action to address this unlawful activity.  *See* ¶ 18, *supra*.  Assuming that counsel informed the Board, the Board of School Directors and Superintendent had knowledge of the unlawful actions and acquiesced in the conduct. Alternatively, the Superintendent, the chief executive officer of the District, undeniably had knowledge of and/or directed the unlawful actions.

26.     On April 17, 2009, the parties attended a hearing regarding extended school year services ("ESY") for Max and reached an agreement regarding Max's placement for the Summer.  The District and the Parents agreed that M. would receive from 45 to 80 hours of "direct 1:1 instruction in reading by an individual trained in a systematic, multi-sensory, research based, phonemic reading program, Lindamood-Bell."  The parties also agreed that if the District could not locate an appropriately certified or trained tutor by June 1st the District would obtain a tutor through Lindamood-Bell in Bryn Mawr.  The parties agreed that the amount of tutoring would be determined by the District Lindamood-Bell tutor in conjunction with Krista Seitzinger [the director of the Bryn Mawr Lindamood-Bell program] or her designee.  *See* Exhibit 4 to First Amended Complaint.

27.     The District, in retaliation for Parents' exercising their First Amendment rights, is attempting to renege upon its agreement to provide the Lindamood-Bell tutoring.  The facts supporting a claim of retaliation are as follows:

    a.  Parents began requesting contact information for the District-trained reading tutor in the beginning of June, 2009.

    b.  The week of June 24, 2009, counsel for the Parents left a message for the District's attorney seeking contact information for the District tutor.

    c.  On June 24, 2009, counsel for the District sent an email to Parents' attorney, stating:

> Regarding the ESY agreement, I want to give you notice that, per the agreement, the District's representative will be reaching out to Krista Seitzinger at Lindamood-Bell.
>
> Kindly let me know if parents have any questions or concerns about the ESY agreement implementation so that we may address any such matters in a timely fashion.

    d.  On July 7, 2009, counsel for the Parents sent the following email to counsel for the District:

> In June, I left you a voice mail message requesting information about setting up ESY programming.
>
> The email below is your response and is is the email that I remember, and I can see that my interpretation (that the District would fund the tutoring at Lindamood Bell rather than using a District teacher) was incorrect, now that I have your subsequent clarification.
>
> With that said, please note the following:
>
>    * No one from the District has contacted Krista Seitzinger at Lindamood Bell
>    * Parents have been requesting contact information for the tutor since June and have not received the information, so they cannot contact her.
>    * There has to be some overlap with the new tutor and Lindamood Bell to ensure continuity and the amount of programming Max needs is extensive.  Therefore it is imperative that the District either have the tutor contact Lindamood Bell AND the Parents tomorrow or provide Parents with the contact information for the tutor tomorrow.
>
> I apologize for my misunderstanding - please contact your client to ensure that the necessary steps are taken to provide the requisite tutoring.

    e.  On or about July 8, 2009, Mrs. C. finally received contact information for the District tutor and contacted her immediately.  The District tutor informed her that Dr. Van Langeveld had hired her for 45 hours of instruction only and that she was not available for more than 45 hours of instruction.  Mrs. C. explained that the parties had agreed to between 45

and 80 hours of instruction.  However, insofar as the amount of instruction would only be determined after consultation between the District tutor and Lindamood Bell, there might not be a problem with the tutor's availability.  Mrs. Crowther requested that the District tutor contact Lindamood Bell immediately to discuss the recommendation for programming for the rest of the summer.  However, the tutor did not contact Lindamood Bell.

f.  On or about July 19, 2009, the District informed Parents, through counsel, that the District tutor had withdrawn from her commitment to provide tutoring, allegedly because of Mrs. C.'s conduct on July 8, 2009.  The District's assertion that Mrs. C. "scared off" the tutor is untenable, given the fact that during the first and only conversation that they had, the tutor was adamant that she had no more than 45 hours of tutoring time available.  Her lack of availability for the requisite number of hours pre-dated any contact with Mrs. Crowther.  As a result, the District asserted that it would not provide the agreed-upon educational programming as outlined in April, 2009.

g.  On July 20 and 21, 2009, the parties met for two more days of hearing.  Initially, the District maintained that it would not provide the agreed-upon programming but would instead agree to payment of 80 hours of tutoring at $50/hour.  Parents responded by requesting that the parties go to the Hearing Officer with the dispute because that offer was not consistent with the parties' agreed-upon educational program and placement.  The District then conceded that it would provide the agreed-upon programming at Lindamood-Bell for the Summer.  Thus, as of July 21, 2009, the District had affirmed its agreement to instruction at Lindamood-Bell, with the amount of instruction (between 45 and 80 hours) to be determined by Krista Seitzinger or her designee.

h.  Lindamood-Bell is recommending 80 hours of continued direct 1:1 instruction.  There is no writing memorializing any agreement between the parties except for the transcript from the April, 2009 IEP meeting, which establishes a pendent program and placement at Lindamood-Bell for 80 hours.

i.  On August 6, 2009, counsel had the following email exchange:

> From: Catherine Merino Reisman
> [mailto:creisman@reismancarolla.com]
> Sent: Thursday, August 06, 2009 5:04 PM
> To: Romberger, Jr, Karl A.
> Subject: M C. (WSSD)
>
> Karl,
>
> Today, my clients spoke with Lindamood Bell and there is no executed contract for LMB.  Mark Lincoln contacted Ron Van Langeveld at his farm in upstate New York and told the Parents that "there is a problem" and they should contact counsel.
>
> What is the problem?  If M cannot start Lindamood Bell on August 10th, he will not get the 80 hours of instruction in.

Please call me at your earliest convenience (even if it is over the weekend) on my cell phone . . .  to discuss.

Catherine

From: Romberger, Jr, Karl A. <KRomberger@foxrothschild.com>
Date: Thu, Aug 6, 2009 at 5:22 PM
Subject: RE: Maxwell C. (WSSD)
To: Catherine Merino Reisman <creisman@reismancarolla.com>

Catherine:

Yes, I heard about the Crothers' conversation with Mark Lincoln.  ***I have also been learning about their public relations flanking movement***.  Rest assured, the District will make decisions based on professional educational judgment about appropriate programming for Max and not in response to whipped up one-sided sentiment.

Regrettably, neither of us followed-up in writing what was agreed to, but I know there was no agreement for direct District contract with Lindamood-Bell.  Rather, given that the family scared off the District's qualified tutor, the District's offer was to issue payment to the parents in the amount it would have cost the District, that is 80 hours of tutoring at $50 per hour (note that the District, as part of this, is not even contesting the unilateral determination of 80 hours for tutoring).  The Crowthers could use the money in any manner they saw fit, including for tutoring payments.

The payment will be submitted to the Board for approval, although I am not sure when the agenda is set.

28.    As counsel admits, there is no writing memorializing this alleged agreement to accept $4000 in lieu of the agreed-upon program and placement for 80 hours of instruction at Lindamood-Bell.  Thus, the *only agreement* is the agreed-upon program and placement at Lindamood-Bell for 80 hours between August 10th and September 5th, 2009.

29.    The District's refusal to fund the pendent program and placement is motivated, in part, by the fact that Parents have exercised their First Amendment rights to discuss the litigation with their friends and neighbors (referred to by the District as a "public relations flanking movement").  Thus, the District is refusing to fund the agreed-upon program and placement in retaliation for Parents' exercise of their First Amendment rights.

**COUNT I**
**Plaintiffs v. Wallingford Swarthmore School District**

**VIOLATION OF THE
INDIVIDUALS WITH DISABILITIES EDUCATION ACT,
20 U.S.C. § 1415(j)**

30.     Plaintiffs re-allege paragraphs 1-29 as though fully set forth herein.

31.     The pendent placement (or "stay-put") provision in IDEA provides, in relevant part:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child.

32.     Section 1415(j) "functions, in essence, as an automatic preliminary injunction.  Thus, once "a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief."  *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 863 (3d Cir. 1996).

33.     Accordingly, once "a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief."  *Drinker*, 78 F.3d at 864.

34.     Parents have sought emergent relief through the administrative process.  To the extent such relief may not be available, Plaintiffs may file a motion for preliminary and permanent injunction and for declaratory relief in this Court.

**Count II
Plaintiffs v. All Defendants
VIOLATION OF TITLE II OF THE ADA,
SECTION 504 OF THE REHABILITATION ACT
AND 42 U.S.C. § 1983 (FIRST AMENDMENT)**

35.     Plaintiffs re-allege paragraphs 1-33 as though fully set forth herein.

36.     It is unlawful to "interfere with any individual in the exercise or enjoyment of rights" under the ADA and Rehabilitation Act.  *See* 42 U.S.C. § 12203(b); 28 C.F.R. § 25.134(b).

37.     It is a violation of the First Amendment, redressable under 42 U.S.C. § 1983, to retaliate against individuals who have pursued litigation to protect their rights.  *Cf. Snell v. City of York*, 2009 U.S. App. Lexis 8818, at *12 (Apr. 27, 2009) (violation of First Amendment to treat protester expressing religious views differently than other individuals in the same situation).

38.     Plaintiffs are entitled to relief under Section 504, the ADA and 42 U.S.C. § 1983 in that:

    a.   Parents engaged in protected activity by unilaterally placing M.C. in the Lindamood Bell tutoring program and seeking reimbursement;

    b.   Defendants' actions, in prosecuting truancy charges against Parents, were sufficient to deter a person of ordinary firmness from exercising their rights under federal law to provide FAPE to M.C. and seek reimbursement; and

    c.   The unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action establishes a causal link between the protected activity and the adverse actions related to M.C.'s programming.

    d.   The fact that the District has provided almost identical programming to another special education student establishes that any claim that the District is refusing to fund Lindamood Bell because of lack of appropriateness is entirely pretextual.

39.     Because of Defendants' violations of the ADA and the Rehabilitation Act, Plaintiffs have suffered monetary damages, in the form of attorney's fees incurred in connection with the truancy proceedings, lost wages, and other incidental expenses.

40.     Because of Defendants' violations of the ADA and the Rehabilitation Act, M.C., C.C., and K.C. are entitled to compensatory damages for the physical and emotional distress caused by Defendant's actions.

41.     The District is liable for the actions of its employees because decisionmakers possessing final authority had knowledge of and acquiesced in the unlawful activity.

### COUNT III
### Plaintiffs v. All Defendants
### VIOLATION OF 42 U.S.C. SECTION 1983
### EQUAL PROTECTION CLAUSE (CLASS OF ONE)

42.     Plaintiffs re-allege paragraphs 1-31 as though fully set forth herein.

43.     Defendants treated Plaintiffs differently than other similarly situated individuals seeking temporary excusal for absence.

44.     Defendants did so intentionally.

45.     There was and is no rational basis for the difference in treatment.

46.     Accordingly, Plaintiffs have stated a violation of the Equal Protection Clause under a "class-of-one" theory.

Based upon the foregoing, Parents respectfully request the following relief:

    a.  A declaratory judgment stating that the Defendants violated the ADA, Section 504, and Section 1983 when they proceeded with truancy charges against C.C. and K.C.;

    b.  If appropriate relief is not available through the administrative process, preliminary and permanent injunctive relief, and a declaratory judgment, requiring that the District comply with 20 U.S.C. § 1415(j) and provide 80 hours of programming at Lindamood-Bell in Bryn Mawr subsequent to August 10, 2009 as M.'s extended school year;

    c.  Reimbursement for expenses and other incidental damages related to the truancy proceedings;

    d.  Compensatory damages, payable by all Defendants'

    e.  Punitive damages, payable by the Individual Defendants;

    f.  Attorney's fees and costs;

    g.  Such other relief as authorized by federal and state law.

Respectfully submitted,

REISMAN CAROLLA LLP

Dated: August 10, 2009

/s/ Catherine Merino Reisman
Catherine Merino Reisman
19 Chestnut Street
Haddonfield NJ  08033-1810
t 856.354.0071
f 856.873.5640
creisman@reismancarolla.com

**Attorneys for M.C., C.C. and K.C.**



# REISMAN CAROLLA LLP
## ATTORNEYS AT LAW

20 East Redman Avenue
Haddonfield NJ 08033-2315
t 856.354.0071
f 856.873.5640
creisman@reismancarolla.com

Catherine Merino Reisman
Admitted in New Jersey & Pennsylvania

March 27, 2009

**BY E-MAIL**
A. Kyle Berman
Fox Rothschild LLP
10 Sentry Parkway, Suite 200
P.O. Box 3001
Blue Bell, PA 19422-3001

Re:  M____  C____  (Wallingford Swarthmore Area SD)

Dear Mr. Berman:

I am responding to your correspondence of today's date and to the truancy paperwork that was delivered today to M____  C____'s home.

Because I cannot communicate with the Board of School Directors personally, I am specifically requesting that you notify them of the claims of intimidation and retaliation related to this case, so that they can have the opportunity to rectify the situation prior to my clients being forced to take further action.

As I have stated previously, the District's filing of truancy proceedings is blatant retaliation and intimidation in violation of Section 504 of the Rehabilitation Act and the First Amendment to the United States Constitution.  It is obvious from the sequence of events here that the District, the Superintendent, Dr. VanLangeveld, Ms. Gaudioso and now, the Board of School Directors, have personal knowledge of and involvement in this retaliation.

The following timeline establishes the retaliatory nature of the District's actions.

- November 2008:  The IEP team (District members included) agrees that M____  is not making appropriate progress and needs more intensive instruction than he is getting within the District.  The team agrees to look at private schools in the area. M____  is 9 years old and reading at a pre-primer level.
- November 2008 to February 2009: The District fails to send out referral packets to private schools.
- February 2009: Mrs. C____  contacts over 20 private schools in the area. None of them will accept M____  because he is so far behind in reading.  However, if through intensive instruction he can make some progress, some schools might accept him in the Fall.
- March 2009: The IEP Team meets.  The meeting is taped.  The District-contracted speech/language pathologist states that M____  needs intensive 1:1



REISMAN CAROLLA LLP

A. Kyle Berman, Esquire
March 27, 2009
Page 2

instruction in reading that is phonologically based. Dr. Van Langeveld indicates that Lindamood Bell is a good program. Parents request that the District fund intensive Lindamood Bell instruction in the mornings (either in the elementary school or at the Lindamood Bell facility). The District refuses and Parents indicate that they will fund the Lindamood Bell services privately and seek reimbursement.

- M    attended Lindamood Bell for a full day through March 20, 2009. On March 20, Parents told District personnel that M    would be attending school for half-days beginning on March 23, 2009, for lunch, recess, specials, and related services.

- This week, the District threatened Parents with a truancy action. Parents responded yesterday, laying out the above timeline and indicating that they would be willing to have the Lindamood Bell instruction delivered to M    at the elementary school. (M    cannot attend Lindamood Bell after school and receive the ineffective literacy instruction during the school day, because it will hamper his ability to progress in the Lindamood Bell program.)

- Today, Parents received notice of truancy charges, although M    is attending school for a half-day every day and the District is aware that he is receiving parentally funded programming the other half of the day.

- The District's policy allows for the Principal or Superintendent to grant a temporary excusal from attendance for "urgent reasons." Parents have requested such a temporary excusal so that M    can attend the 1:1 intensive reading instruction that is phonologically based that he so desperately needs. The District's refusal to use this policy to excuse M    temporarily from attendance is discriminatory. In fact, if we are forced to file a lawsuit in federal court, I would not be surprised if discovery reveals that students have been temporarily excused for far less pressing reasons – such as a family vacation.

It is a violation of Section 504 of the Rehabilitation Act for a "recipient [of federal funds] or other person [to] intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege [under the Act] or because he has made a complaint, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this part." 34 C.F.R. § 100.7(e). In addition, such retaliation and intimidation violates the First Amendment to the United States Constitution, which guarantees citizens the right to petition the government for redress of grievances.

C    , K    , and M    C          will be able to establish a violation of Section 504 and Section 1983 because they can establish the following facts:

    (1)    they are engaged in protected activity (securing M    's right to a free and appropriate public education);

    (2)    the Superintendent, Dr. VanLangeveld, Ms. Gaudioso and, as of today, the Board of School Directors (insofar as I have requested that you communicate these facts to the Board) know that they are involved in protected activity;



A. Kyle Berman, Esquire
March 27, 2009
Page 3

(3)     adverse action was taken after Parents asserted their right to provide FAPE and seek reimbursement;

(4)     a causal connection exists between the protected activity and the adverse action, as illustrated by the timing of the truancy proceedings.

Personal liability exists under both Section 504 and 42 U.S.C. § 1983 for violation of the First Amendment.  *See Stengle v. Office of Dispute Resolution*, 479 F. Supp.2d 472, 478 (M.D. Pa. 2007); *Kempkes v. Downey*, No. 07-1298, 2008 U.S. Dist. LEXIS 25981 (S.D.N.Y. 2008).  If the District does not withdraw the truancy charges, Parents will file a Complaint in federal court seeking compensatory damages from the District and compensatory and punitive damages from members of the School Board, the Superintendent, and Dr. VanLangeveld.

Very truly yours,

Catherine Merino Reisman

cc:  K     & C        C

No. 204

# WALLINGFORD-SWARTHMORE SCHOOL DISTRICT

SECTION:     PUPILS

TITLE:         ATTENDANCE

ADOPTED:   July 17, 2006

REVISED:

---

### 204.  ATTENDANCE

| | |
|---|---|
| 1.  Purpose<br>SC 1301<br>Title 22<br>Sec. 11.12 | The district requires that school-aged students enrolled in district schools attend school regularly, in accordance with state laws. The educational program offered by this district is predicated upon the presence of the student and requires continuity of instruction and classroom participation. The district recognizes, as well, that all children cannot be educated in the same manner and has therefore provided a variety of formats to meet the individualized needs of each student.<br><br>Any child who has attained the age of eight (8) years on or before September 1 of any year, or who has entered school at an earlier age and who has not yet attained the age of seventeen (17) years, shall be required to attend school regularly during the entire school year, except as amended by the Pennsylvania Public School Code of 1949, as amended. |
| 2.  Definition | **Regular attendance** shall be defined as attending school for the full day on each day during which school is in session. Students for whom individualized educational plans have been developed are expected to attend all sessions provided for in their program. Students are expected to attend all sessions unless properly excused by school authorities. |
| 3.  Authority<br>SC 1301, 1302,<br>    1327, 1329<br>Title 22<br>Sec. 11.11, 11.23,<br>    11.25, 11.41 | Attendance shall be required of all students enrolled in district schools during the days and hours that the school is in session, except that a principal or teacher may excuse a student for temporary absences when s/he receives satisfactory evidence of mental, physical, or other urgent conditions which may reasonably cause the student's absence. Such excuses and/or requests for temporary absences or temporary exemptions from compulsory school attendance may be investigated and recommendations made through the Department of Pupil Services. All exemptions from compulsory school attendance or requests for alternative educational programming shall be approved by the Superintendent. |
| Title 22<br>Sec 11.21 | All absences occasioned by observance of the student's religion on a day approved by the district as a religious holiday shall be excused, and no student so excused shall be deprived of an award or eligibility to compete for an award or the opportunity to make up a test given on the religious holiday. |

M.C. v. Wallingford Swarthmore Sch. Dist.<br>Exhibit 2 to Complaint<br>Pate 1 of 5

## 204.  ATTENDANCE - Pg. 2

| | |
|---|---|
| | The district considers the following conditions to constitute reasonable cause for absence from school: |
| | 1.  Personal illness. Absences of three (3) or more days will require a doctor's note. |
| Title 22<br>Sec. 11.23, 11.25 | 2.  Medical, dental, clinic or hospital appointment. Must have appointment card or certificate and/or written excuse signed by parent/guardian stating date and time of appointment. |
| | 3.  Funeral of relative. Must have written excuse signed by parent/guardian, stating relationship of relative to student and date and time of funeral. |
| Title 22<br>Sec. 11.26 | 4.  Educational trip. Must be pre-approved by the building principal. Written request must be submitted by parent/guardian, stating nature and purpose of the trip. |
| | 5.  Family trip. Family trips of an entertainment nature may not exceed two (2) school days per trip, and require the approval of the building principal one (1) week in advance of the first day of absence. |
| | 6.  Student visits to colleges. Must have a pre-approved written excuse signed by parent/guardian, stating name of college and date of visitation. |
| | 7.  Exceptionally urgent reasons. This term is to be strictly construed and shall not be used to permit irregular attendance. Generally, such absences will be permitted only after an assessment has been made by school staff and no alternative plan to meet the need can be devised. Any such absence which will exceed ten (10) days must be approved by the principal. Additionally the student must have a written excuse signed by parent/guardian. |
| Title 22<br>Sec. 11.21 | 8.  Religious Holidays. A pupil's absence from school on a religious holiday shall be recognized as an excused absence, without penalty on scholastic or attendance records. So as not to penalize students for their religious observance, the scheduling of examinations, assemblies, field trips, graduation exercises, and other special events, including school-related programs for parents/guardians, shall not be held on religious holidays which would preclude a student who otherwise would participate. In addition, such absences shall not affect any "perfect attendance" reward programs. |
| | 9.  Required court appearance. |

M.C. v. Wallingford Swarthmore Sch. Dist.
Exhibit 2 to Complaint
Pate 2 of 5

204.  ATTENDANCE - Pg. 3

| | |
|---|---|
| Title 22<br>Sec. 11.8, 11.22,<br>       11.23, 11.28<br>SC 1327, 1329<br>Pol. 115, 117, 118 | Attendance need not always be within school facilities. A student will be considered in attendance if present at any place where school is in session by authority of the district; the student is receiving approved tutorial instruction or health care; the student is engaged in an approved and properly supervised independent study, work-study or career education program; the student is receiving approved homebound instruction. |
| SC 1546<br>Title 22<br>Sec. 11.21 | The district shall, upon written request of the parents/guardians, release from attendance a student participating in a religious instruction program acknowledged by the district. Such instruction shall not require the child's absence from school for more than thirty-six (36) hours per school year, and its organizers must inform the district of the child's attendance record. The district shall not provide transportation to religious instruction. |
| | The district shall excuse the following students from the requirements of attendance at the schools of this district: |
| SC 1330 | 1.  On certification by a physician or submission of other satisfactory evidence and on approval of the Department of Education, children who are unable to attend school or apply themselves to study for mental, physical or other reasons that preclude regular attendance. Students with a mental or physical disability shall be exempted from compulsory school attendance only after assessment by a Multi-Disciplinary Team. Such exemptions are authorized only if the district cannot provide an appropriate educational program devised to meet the special needs of such students. |
| Title 22<br>Sec. 11.5, 11.32 | 2.  Students enrolled in nonpublic or private schools in which the subjects and activities prescribed by law are taught, except that such students and students attending college who are also enrolled part-time in the district schools shall be counted as being in attendance in this district. |
| SC 1327 | 3.  Students fifteen (15) or sixteen (16) years of age whose enrollment in private trade or business schools has been approved. |
| SC 1330 | 4.  Students fifteen (15) years of age, and fourteen (14) years of age who have completed sixth grade, who are engaged in farm work or private domestic service under duly issued permits. Such exemptions are rarely granted and only upon presentation of emergency need by the family. |
| SC 1330<br>Title 22<br>Sec. 11.28 | 5.  Students sixteen (16) years of age regularly employed during the school session and holding a lawfully issued employment certificate. The issuance of working papers shall be a function of the Child Accounting/Census Department. |

204.  ATTENDANCE - Pg. 4

| | |
|---|---|
| Title 22<br>Sec. 11.34 | 6.  Students receiving homebound instruction shall be considered present. Homebound tutors shall be provided for any student who shall be absent from school for an extended period, provided there is a written recommendation for such instruction from a physician. This recommendation, along with a request from the parent/guardian, shall be submitted to the Director of Pupil Services. The doctor's statement shall include a prognosis, which shall include the maximum length of time the student is likely to be out of school. A notation of such instruction shall be placed in the cumulative folder. |
| | 7.  Subject to review and approval by the principal extended travel on the part of the student's family which necessitates the accompaniment of the student is a valid cause for absence under "exceptionally urgent reasons," and can be granted for a period not exceeding sixty (60) calendar days. Such approved absences will be marked excused and classified under "other urgent reasons." Wherever possible, such absence should be compensated by extensive make-up work, by attendance at school in areas visited, or by guided study enroute. Schools may require that the student submit a report on the educational activities experienced on the trip. Schoolwork missed shall be excused, but students will be responsible for passing the same examinations as all students. Teachers are expected to provide reasonable make-up assistance for such students. |
| | <u>Truancy And Absence</u> |
| SC 1332, 1333,<br>1338, 1354 | Truancy of Students Sixteen (16) Years of Age or Younger - After accumulation of three (3) illegal days absence from school, the student's parents/guardians shall receive a First Notice and his/her counselor will receive information copies of the notice. Further action will be determined by Administrative Guidelines. |
| | Administrative Guidelines include but are not limited to: loss of academic credit for work missed, detention, Saturday school, in-school suspension, out-of-school suspension, petition for truancy, referral to community agency. |
| | Truancy of Students Seventeen (17) Years of Age or Older - After accumulation of three (3) unexcused days absence from school, the student will be referred to the counselor. Further action will be determined by Administrative Guidelines. |
| | Administrative Guidelines include but are not limited to: loss of academic credit for work missed, detention, Saturday school, in-school suspension, out-of-school suspension, petition for truancy, referral to community agency. |
| | Ten-Day Letters - When a student has been absent for more than ten (10) days in a school year without a doctor's excuse, the school administrator may decide to send a letter to the student and his/her parents/guardians, informing them that any further |

204.  ATTENDANCE - Pg. 5

|  | absence would be considered illegal or unexcused, unless a doctor's excuse covering the absence period is furnished. The school principal in consultation with the counselor will take this action when, in the principal's judgment, the ten (10) absences have not been justified, even though excused by the parent/guardian. |
|  | Tardiness to School - Tardiness to school shall be handled according to Administrative Guidelines. An accumulation of time missed from school due to unexcused tardiness can equate to full days of truancy and may be prosecuted in the same manner as other unlawful absence. |
|  | Class Cutting - Absence from specific classes during the school day is also considered an unexcused absence and the accumulation of time missed from class can equate to full days of truancy. Such situations may be prosecuted in the same manner as other unlawful absence. |
|  | Automatic Withdrawal for Excessive Unexcused Absences - In accordance with Pennsylvania Regulations, any student who is seventeen (17) years of age, or older, and absent for ten (10) consecutive school days, may be automatically removed from the school rolls by the administration. Any student so removed will be notified by mail. |
| 4.  Delegation of Responsibility | The Superintendent shall develop procedures for the attendance of students. |
| SC 510, 1318 | Repeated infractions of district policy requiring the attendance of enrolled students may constitute misconduct and disobedience to warrant the student's suspension or expulsion from the regular school program. |
|  | References: |
|  | School Code – 24 P.S. Sec. 510, 1301, 1302, 1318, 1327, 1329, 1330, 1332, 1333, 1338, 1339, 1354, 1546 |
|  | State Board of Education Regulations – Title 22 PA Code Sec. 11.1, 11.2, 11.3, 11.5, 11.8, 11.11, 11.12, 11.21, 11.22, 11.23, 11.24, 11.25, 11.26, 11.28, 11.32, 11.34, 11.41 |
|  | Board Policy – 115, 117, 118 |

M.C. v. Wallingford Swarthmore Sch. Dist.
Exhibit 2 to Complaint
Pate 5 of 5

```
 1
 2
 3              OFFICE FOR DISPUTE RESOLUTION
 4                   IN RE:   M       C.
 5         Wallingford-Swarthmore School District
 6                    - - - - -
 7              File No. 9882/08-09 LS
 8                   Volume III
 9
10                   Due Process Hearing held
11     in the above-captioned matter before
12     Anne Carroll, Esquire, Hearing Officer, taken
13     at the Wallingford-Swarthmore School District
14     Administration Building, 101 Plush Mill Road,
15     Wallingford, Pennsylvania, on Tuesday, July
16     21, 2009, at 10:00 a.m.
17                    - - - - -
18
19
20
21
22         ANTHONY GRAVINESE & ASSOCIATES
           Registered Professional Reporters
23              1187 MacPherson Drive
           West Chester, Pennsylvania  19380
24          Telephone:  (610) 696-8990
               Fax: (610) 692-1187
25
```

M.C. v. Wallingford Swarthmore Sch. Dist.
Exhibit 3 to First Amended Complaint
Page 1 of 3

```
 1    BEFORE:
 2            Anne Carroll, Esquire
 3            Hearing Officer
 4
 5                 - - - - -
 6
 7    APPEARANCES:
 8            Karl Romberger, Esquire
 9            On behalf of the School District
10
11            Catherine Reisman, Esquire
12            On behalf of M      C.
13
14                 - - - - -
15
16    STENOGRAPHER:
17            Debra Anne Gerstemeier
18
19
20
21
22
23
24
25
```

**7/21/2009**                                                              **Page 297**

M.C. v. Wallingford Swarthmore Sch. Dist.
Exhibit 3 to First Amended Complaint
Page 2 of 3

1    Q.    Do you recognize this document?
2    A.    Yes.
3    Q.    This is a testing assessment from
4  Lindamood-Bell?
5    A.    Yes.
6    Q.    For M   C.?
7    A.    Yes.
8    Q.    And the District has provided
9  services for other students within the school
10 district at Lindamood-Bell, hasn't it?
11   A.    Yes.
12   Q.    Okay.  In fact, wasn't a student
13 from Wallingford Elementary School placed
14 there for at least one semester?
15         MR. ROMBERGER:  Objection.
16 Relevance.
17              Another student's placement
18 at a different program?  This is M  's
19 program.
20              MS. REISMAN:  Well, the
21 relevance is --
22              THE HEARING OFFICER:  Go
23 ahead.
24              MS. REISMAN:  -- the denial
25 of that option to M   when they were

1  looking for other outside placements.
2              It directly goes to the
3  equities in terms of reimbursement.
4              MR. ROMBERGER:  We know
5  nothing of the circumstances of the other
6  child's decision-making and process, and
7  I can't even bring that in.  I couldn't
8  get those facts into the record to
9  justify that.  That would be another
10 trial.
11              THE HEARING OFFICER:  I
12 understand that, but he can certainly
13 justify why it wasn't appropriate for
14 M  .
15              MR. ROMBERGER:  For M  .
16              THE HEARING OFFICER:  The
17 whole question, though, is was it ever
18 done.  If there was a policy, it would be
19 one set of facts.  If it was a policy,
20 "Well, we never send anyone to
21 Lindamood-Bell," that is one thing; but,
22 "Yes, we do and it's appropriate but it
23 isn't appropriate for this student and
24 here is why," you can certainly explore
25 that.

1              MS. REISMAN:  Right.
2              THE HEARING OFFICER:  It's
3  only for the purpose of saying was this
4  ever done.
5              MS. REISMAN:  Right.
6  Because what was told to the Parents was
7  it can't happen, it doesn't happen, and
8  it's not a placement, it's not a school.
9  And that's why we're prosecuting you for
10 truancy.
11              And that goes directly to
12 equities.
13              THE HEARING OFFICER:  And I
14 am going to allow it just for that
15 purpose, understanding that we are not
16 going to have any testimony about another
17 child's reason for placement.  But
18 certainly the reason for -- and you can
19 certainly fully explore that, but for the
20 reason why the School District did not
21 consider it appropriate for M  .
22 BY MS. REISMAN:
23   Q.    The District got this testing from
24 Lindamood-Bell around January of 2008,
25 correct?

1    A.    Yes.
2    Q.    And just to clarify in case the
3  record got muddied there, the District has
4  basically provided services at Lindamood-Bell
5  for other students within the
6  Wallingford-Swarthmore School District,
7  correct?
8    A.    Yes.
9    Q.    And if you turn to Exhibit S-145,
10 the Parents also provided this information to
11 the District, correct?
12              (School District Exhibit
13    No. 145 marked for identification)
14              THE WITNESS:  (Witness
15    complies with request)
16              I'm not sure when they
17    provided it, but, yes.
18 BY MS. REISMAN:
19   Q.    Was it provided prior to the March
20 2009 IEP meeting?
21   A.    I don't recall.
22   Q.    And prior to the March 2009 IEP
23 meeting, there had been no change from either
24 Ms. Caspari or A Total Approach regarding the
25 level of service that M   needed in terms of

7/21/2009

**Pages 372 - 375**

M.C. v. Wallingford Swarthmore Sch. Dist.
Exhibit 3 to First Amended Complaint
Page 3 of 3

```
 1                                              25
 2
 3        OFFICE FOR DISPUTE RESOLUTION
 4             IN RE:  M       C.
 5    Wallingford-Swarthmore School District
 6              - - - - -
 7         File No. 9882/08-09 LS
 8              Volume I
 9
10         Due Process Hearing held in
11    the above-captioned matter before
12    Anne Carroll, Hearing Officer, taken at
13    the Wallingford-Swarthmore School
14    District, 101 Plush Mill Road,
15    Wallingford, Pennsylvania, on Friday,
16    April 17, 2009 at 12:35 p.m.
17              - - - - -
18
19
20       ANTHONY GRAVINESE & ASSOCIATES
         Registered Professional Reporters
21         1187 MacPherson Drive
         West Chester, Pennsylvania  19380
22       Telephone:  (610) 696-8990
             Fax:  (610) 692-1187
23
24
                               Page 1                                    Page 1
```

```
 1                                              24
 2    BEFORE:        Anne Carroll, Esquire       25
                     Hearing Officer
 3
 4
 5    APPEARANCES:    Karl Romberger, Esquire
                      On behalf of the
 6                    Wallingford-Swarthmore
                      School District
 7
 8                    Catherine Reisman, Esquire
                      On behalf of M      C.
 9
10
11
12    STENOGRAPHER:  Elaine DiDomenicis
13
14
15
16
17
18
19
20
21
22
23
                               Page 2                                    Page 2
```

Exhibit 4 to First Amended Complaint
M.C. v. Wallingford-Swarthmore Sch. Dist.
Page 1 of 4

```
 1              I N D E X
 2   WITNESS              EXAMINATION
 3   (No witnesses)
 4              - - - - -
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1              E X H I B I T S
 2   NUMBER          MARKED      ADMITTED
 3   (None marked)
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1              - - - - -
 2              PROCEEDINGS
 3              - - - - -
 4              THE HEARING OFFICER:  Good
 5   afternoon.  The Due Process Hearing for
 6   M      C      , file number
 7   9882/08-09 LS is hereby convened.
 8              We have not gone on the record
 9   right away this morning, because I
10   understand the parties who are
11   represented here today -- and that is Mr.
12   and Mrs. C      and their attorney,
13   Catherine Reisman, Esquire, and the
14   School District represented by
15   Ron Van Langeveld, and also the attorney
16   for the School District is Karl
17   Romberger, Esquire -- I have been
18   informed that the parties have reached a
19   date -- an agreement regarding the
20   extended school year issue that we came
21   together for this morning for the
22   hearing.
23              Is that an accurate statement?
24              MS. REISMAN:  Yes.
25              THE HEARING OFFICER:  And Mr.
```

```
 1   Romberger?
 2              MR. ROMBERGER:  Yes, that is
 3   correct.  Can I just have the record
 4   reflect also that Gina Ross is present?
 5              THE HEARING OFFICER:
 6   Oh, I'm sorry.  Yes, certainly.  Gina
 7   Ross is with the School District.
 8              So I believe the parties at
 9   this point would like to put the terms of
10   that agreement on the record.  Is that
11   accurate?
12              MS. REISMAN:  Yes, it is.
13              MR. ROMBERGER:  Yes.
14              THE HEARING OFFICER:  Go
15   ahead.
16              MS. REISMAN:  The parties
17   agree that, in settlement of their
18   dispute regarding extended school year,
19   school year services, the
20   Wallingford-Swarthmore School District
21   will provide the following services to
22   M      C      during the summer of
23   2009.
24              Shining Stars Program from
25   June 29 through July 24, 2009.  Within
```

Exhibit 4 to First Amended Complaint
M.C. v. Wallingford-Swarthmore Sch. Dist.
Page 2 of 4

**Page 7**

```
 1    the Shining Stars program 90 minutes per
 2    week of occupational therapy, either
 3    group or push-in.  Within the Shining
 4    Stars program 90 minutes per week of
 5    physical therapy, either group or
 6    push-in.
 7              During that time, three times
 8    30 minutes a week of speech and language
 9    therapy with Sue Caspari, and one time 30
10    minutes per week of speech and language
11    within the Shining Stars program.
12              Transportation for all of the
13    foregoing is to be provided by the
14    District.  The District will also provide
15    direct one to one instruction in reading
16    by an individual trained in a systematic,
17    multi-sensory, research-based, phonemic
18    reading program, Lindamood-Bell, with
19    training and certification details to be
20    provided to the parents by June 1st.
21              If the District cannot locate
22    an appropriately certified, trained or
23    certified tutor by June 1st the District
24    will obtain a tutor through
25    Lindamood-Bell in Bryn Mawr.
```

**Page 8**

```
 1         M    will receive a minimum of
 2    four to five hours and a maximum of 80
 3    hours of direct one to one instruction.
 4    The amount of one to one instruction will
 5    be determined by data review on or before
 6    July 20th, 2009 by recommendation of the
 7    District Lindamood-Bell tutor in
 8    conjunction with Krista Seitzinger or her
 9    designee.
10              The District will also provide
11    a total of 20 hours of occupational
12    therapy and physical therapy at A Total
13    Approach during the summer between June
14    15th and September 4th, 2009 with
15    scheduling determined between the parents
16    and A Total Approach, and transportation
17    provided by the parents.
18              The parties acknowledge that
19    the execution of this agreement is
20    without prejudice to either party's
21    position regarding the claims and
22    defenses, including claims for prevailing
23    party attorney fees raised in this
24    matter.
25              THE HEARING OFFICER:  Mr.
```

**Page 9**

```
 1    Romberger, does that reflect your
 2    understanding of the agreement?
 3              MR. ROMBERGER:  Correct.  On
 4    behalf of the District that is
 5    acceptable.
 6              HEARING EXAMINER:  And I
 7    assume the parents having heard it and it
 8    is acceptable to the parents.  Is that
 9    accurate?
10              MS. C    :  Yes.
11              MR. C    :  Yes.
12              THE HEARING OFFICER:  And Mr.
13    Van Langeveld?
14              MR. VAN LANGEVELD:  Yes.
15              THE HEARING OFFICER:  All
16    right.  Well, thank you very much.  Then
17    in that case we can adjourn the hearing
18    today for M      C      .
19              I believe there are additional
20    issues under the regular IDEA at statute
21    time lines, statutory time lines, and I
22    believe we have agreed, at least
23    tentatively, to reconvene for the rest of
24    the hearing on May 21st.
25              Is 10:00 a.m. an acceptable
```

**Page 10**

```
 1    time?  Is that a good time for you both?
 2              MR. ROMBERGER:  That's fine
 3    with me.  We just need to confirm the
 4    District's availability.
 5              THE HEARING OFFICER:  Okay.
 6    Well, you can do that by e-mail and I
 7    will wait to have the notices sent out
 8    until it's confirmed.
 9              All right.  Is there anything
10    further to be heard today then?
11              MS. REISMAN:  No.
12              MR. ROMBERGER:  No.
13              THE HEARING OFFICER:  Okay.
14    Thank you very much.  Then in that case
15    we are adjourned for today to reconvene,
16    we hope, on May 21st.  Thank you.
17              (Hearing concluded at 12:49
18    p.m.)
19
20
21
22
23
24
25
```

4/17/2009

Exhibit 4 to First Amended Complaint
M.C. v. Wallingford-Swarthmore Sch. Dist.
Page 3 of 4

**Pages 7 - 10**

```
 1              CERTIFICATE
 2          I, Elaine DiDomenicis,
 3    Certified Shorthand Court reporter and
 4    Notary Public, do hereby certify that the
 5    foregoing Due Process Hearing in the matter
 6    of M     C. was held before Anne Carroll,
 7    Hearing Officer, at the
 8    Wallingford-Swarthmore School District, 101
 9    Plush Mill Road, Wallingford, Pennsylvania,
10    on Friday, April 17, 2009; that said witness
11    was duly sworn before the commencement of
12    their testimony; that the testimony of said
13    witness was written in shorthand by myself
14    and reduced to typing under my direction and
15    control; that the foregoing is a true and
16    correct transcription of the testimony; that
17    I am not related to or employed by any of
18    the parties, or their attorneys or agents,
19    or interested directly or indirectly in the
20    matter in controversy either as counsel,
21    attorney, agent, or otherwise.
22              Elaine DiDomenicis
23              Court Reporter
24
25
                                   Page 11
```

Exhibit 4 to First Amended Complaint
M.C. v. Wallingford-Swarthmore Sch. Dist.
Page 4 of 4